Good morning. Our first case is Quinteros v. Warden. Mr. Sorensen. Thank you, Your Honor. May it please the Court, my name is Quinn Sorensen and I represent the petitioner in this matter, Nelson Quinteros. I'd like to reserve three minutes for rebuttal if I may. Certainly. Thank you, Your Honor. The Due Process Clause of the U.S. Constitution requires, as this Court has held on a number of occasions, that when an alien is detained for an unreasonable amount of time by immigration authorities during the removal process, he is entitled to a bond hearing at which the government bears the burden of proof by clear and convincing evidence that the alien poses either a risk of flight or a danger to the community based on evidence of the alien's current circumstances and conduct. And 1226E says we don't have jurisdiction to review the immigration judge's weighing of whether he's a flight risk or a danger to society, right? I do not believe that's what it says, Your Honor. What 1226E states is that the Court is precluded from review of discretionary judgments of the attorney. Right, and that's what I'm positing is, I mean, when we're district judges, we have bond hearings, as you know, and the judge just makes a discretionary determination. It's a little bit, not standardless, but it's sort of a field test, right? You consider what the person's accused of, you consider what their criminal history is, you consider whether they are likely to flee or be a danger to society. Those are very discretionary judgments made by the fact finder, are they not? There are discretionary elements to all of the fact-finding elements you've just discussed, Your Honor, but there is a critical distinction between what you are describing and what occurred in this case and the challenge in this case. The challenge in this case is not to the discretionary judgment of immigration officials regarding the flight risk or the danger to the community of Nelson Quinteros. Rather, the question here is whether the immigration authorities had constitutional authority to continue to detain Mr. Quinteros based on the standards announced by this Court. That is a constitutional question and a question of the limit. Well, it's constitutional depending upon how you frame it. What is, what did the I.J. do here that was unconstitutional? He did not apply the standards that have been announced by this Court in terms of when continued detention is permissible. And again, the standard that has been... Okay. It's current, current dangerousness and current risk of flight. Correct, Your Honor. And he said, you were a member of a gang. It was inherently dangerous. It's a serious offense. It was fairly recent. And I believe you are, you are a continued danger based upon that crime, which was a heinous, a heinous crime. It's not like you, you know, stole a loaf of bread, for heaven's sakes. That is correct. And that was a ruling he made. Isn't that a discretionary ruling? It is not, Your Honor, based on the standards that have been announced by this Court. And I would link this back to what exactly occurred in cases such as Diop and Chavez. In those cases, what the question presented was and what was not barred from this Court review was what is the standard by which immigration officials must judge whether continued detention is appropriate and then whether did the hearings they conducted satisfy those constitutional standards. In both of those cases, they recognized, this Court recognized, the burden is upon the government to show by some burden and Guerrero later clarified by clear and convincing evidence that the alien poses a risk of flight or of current danger to the community. And in both those circumstances, they then assessed prior detention hearings that had been conducted by immigration authorities. And that is called what's normally... Describe what you think the IJ's reasoning was here. What the IJ reasoned in this case was that based upon solely the only evidence presented by the government was the judgment of conviction from 2013, three years prior concerning conduct in 2010, six years prior when Mr. Contreras was a juvenile, and the notice of removal which said that Mr. Contreras was deportable as of March 2014. Those were the only... That exhausted all of his possibility of staying in the country, correct? No, Your Honor. There is, in fact, a pending appeal before this Court that is currently... Have you moved to expedite that? I'm not involved in that case, Your Honor. Has his counsel moved to expedite that? It is being expedited at this point in time. There is a temporary stay motion that has been granted. There's a motion for stay and that is currently pending. But has briefing been completed? What's the status of that case? Briefing has been completed on the motion for a stay as far as I'm aware. I guess the point I'm getting at is if he doesn't want to be in custody, there are two things... This is going to take two paths, right? He's either going to prevail in his petition for review and then get status in the country or he's going to lose that and he's going to be under final order of removal, right? And he'll be moved out of the country. Well, either he will succeed in his appeal and perhaps not be subject to the order of removal at all or at least withholding of removal, yes, or he will be at some point removed. Right, and that can all happen relatively soon. So what's the problem with the detention? I mean, are you saying there's a constitutional problem with the detention? Yes, Your Honor, that's because he is currently being detained and has been detained for now five years under Section 21226C of... Mandatory detention. Mandatory detention, but of course this Court has said that any detention over the course of a year... But my point is he could accelerate, he could solve his problem and get things moving if he tried to expedite his appeal. We could hear that pretty quickly, right? He has, in fact, tried to expedite all of his proceedings. The delays that have been caused in this case have not been attributable to Mr. Contreras and I don't see any allegation of that. He has moved forward expeditiously with all of his proceedings and it has been delayed by... There is no pending appeal to this Court. There is not, as far as I know, there's not... Well, then where's the expedition? I mean, if I'm his lawyer, the first thing I do is file a motion. I say, look, my guy's incarcerated. I'd like the Third Circuit to hear this case post-haste, right? That hasn't happened, right? I don't think that is a necessary prerequisite to showing that this is... And this Court said in Chavez that there is no necessity for the alien to preclude or to try to move his case or to limit the grant of his relief. He has a full opportunity, is entitled to a full opportunity to present his case without worry and without detention being imposed upon him simply because he's pursuing available legal remedies. And he's done so expeditiously. The delays that have been caused have been in part because of the government. For instance, the last Third Circuit appeal that he brought, the government asked for a full remand for further consideration in terms of a new Third Circuit decision. So that was something he could not control. It went back to the immigration authorities and now we have another two-year detention period in which he is remaining in prison in a state facility with other prisoners under civil detention order. It should not be allowed because this is well beyond the one-year... Could he agree to be removed to his country of origin while his appeal is pending? No, I don't believe so, Your Honor. I don't believe that's something he can do. He would have to remain detained if he wants to continue to pursue his relief unless immigration authorities allow him to be released. And that is what they are constitutionally required to do. And that is why the question here is so reviewable under 1226 because it is a constitutional question of whether Mr. Contreras' constitutional rights are being violated. And they are in getting back to the question that was asked earlier by Judge Rendell. Is detention of an alien different from other detention? I mean, there's no constitutional right to release on bond and 236A gives the Attorney General the right to grant it in the exercise of discretion. It's also been cited that the burden is on the alien to show to the satisfaction of the immigration judge that he or she merits release on bond. And the number of factors an immigration judge can look at are, you know, there's lots of factors including criminal record, extensiveness of activity, recency, seriousness of offenses. So there's a lot that they can consider. Well, I think there's a little bit to unpack with that question, Your Honor, and I'll take it if I can in order. One is whether there is a constitutional right to a detention hearing and to release. And there is, in fact, and that is what this court held in Dieppe. A right to a hearing, yes. I'm sorry? A right to a hearing, yes. A right to a hearing and release if the hearing does not satisfy constitutional prerequisites to justify the alien's continued detention. And that is proof of a current risk of flight and a current danger. The burden would actually be kind of important here, wouldn't it? It is important. And Dieppe says quite clearly the burden is on the government. Chavez says the same thing. Jennings undercut that? Jennings does not undercut that at all, Your Honor. Jennings, in fact, confirms exactly what was said in Dieppe and Chavez, and that was confirmed in Guerra. In Dieppe and Chavez, this court held that as a matter of constitutional law, the burden is upon the government to prove those factors that continued detention. That was affirmed in Jennings? It wasn't affirmed in Jennings, but it wasn't touched in Jennings. That's different. That's a different situation. Sure. What was held in Dieppe and in Chavez was, in fact, two holdings. One constitutional, one statutory. The constitutional holding was that the due process clause prohibits immigration authorities from continuing the detention of an alien unless the government satisfies its burden of proof. Then the court went on to say, we do not want to interpret the statute, that is 1226C, as allowing for detention in unconstitutional circumstances. So we are going to engraft the constitutional requirement of a hearing onto the provision there. And what Jennings said was, no, the clear language of 1226C does not permit it as a statutory matter of interpretation. And then Jennings said at the end of the opinion that we recognize that there is still a constitutional issue. So detention may be authorized by 1226C and be mandated, but it may still be unconstitutional. And that is a separate question. And that is the separate question that is still present in Dieppe and Chavez. And in fact, in Guerrera, at footnote 11, this court stated quite explicitly that there are two separate holdings, one statutory, one constitutional. Jennings challenged and overruled the statutory aspect, but did not, at least so far as the court was willing to address at that point, did not, so far as the court was concerned, overrule the constitutional holding in Dieppe and Chavez. And that is what we are talking about in this particular case, the constitutional requirement. And that is why, for one reason, the review of this case is not barred by 1226E because this is a constitutional question of authority that remains within the jurisdiction of this court, particularly on habeas proceedings. All right. So where in the record does it show that the I.J. did not apply the clear and convincing evidence standard? I think if you look in the record. Does the I.J. say, you know, I find by a preponderance of the evidence that you are likely to flee? I think there is a few responses, but I will give you the most direct one, which is at no point in the hearing does the I.J. ever use the term clear and convincing, nor do agency officials, nor did the district court in directing the hearing. At the start of the proceeding, that is the bond hearing, it is in appendix 112 if you would like to see it, the I.J. describes the burden of proof in this way. It says the government may satisfy its burden by either evidence or facts or by, quote, inference, argument, whatever. So whatever that means, whatever whatever means in that circumstance, he certainly didn't seem to require clear and convincing. And in fact, during the course of the proceeding, as I mentioned before, the only evidence that was introduced, if you would like to call it that, had actually been used to justify Mr. Contreras' initial detention. That was not independent evidence in any sense of the word. It doesn't need to be independent. I mean, it's, I mean, I'm surprised you gloss over that so quickly because to suggest that somebody laboring, who's already lost at two levels of administrative review, who is awaiting a decision of this court, so his present status is he is on the track to being removed from the country, to suggest that it's not obvious that that person poses a flight risk is sort of a remarkable proposition, isn't it? May I continue, Your Honor? I do not believe it is at all, Your Honor, and that is for several reasons. One, this court made clear in cases like Noah versus INS in terms of Diop and Chavez that the inquiry here is based on current circumstances. There must be, once you get the initial detention... Yeah, the current circumstances are that he's laboring under the disability that he, unless he can get a reversal, he's about to be removed from the country. So when his lawyer says to him, when he says, well, what happens next? And the lawyer says, well, if the court of appeals denies your petition for review, you're being sent back to your country of origin. Does that not give him every incentive to flee? It provides a potential motive to flee, but that would be applicable to every alien in this circumstance. If there was always a circumstance under which the IJ could presume, based on the existence of a notice of removal that had not been overturned, that the alien had a reason and, in fact, was a risk of flight, then these hearings would be unnecessary. They would be pro forma. They would be perfunctory because they could always order the alien detained no matter what his actual circumstances. And that's why in cases like Diop there was actually an initial hearing, and Chavez discusses this. At the initial hearing, the government is required under what's called a Joseph hearing to submit the judgment of conviction and the notice of removal. And in Chavez, this court made clear that in that circumstance, right at the point of detention, sure, even without individual proof of individual circumstances relating to this particular alien, based on the initial detention, you can presume from the notice of removal risk of flight. You can presume from the judgment of conviction danger to the community. And if the alien is so much more pronounced, becomes so much more active, you cannot have that presumption anymore. You cannot rely on that alone. You have to prove some extenuating circumstances, additional evidence of current circumstances. And in Chavez, the court actually recognized that after a year, and here after five years... Under your theory, Mr. Swanson, if there's an initial bond, let's say the crime of conviction is murder, okay, first-degree murder. Under your theory, if at the initial bond hearing a determination is made that the person's a danger to the community because of the murder conviction, three years later, at the subsequent bond hearing, it's insufficient for the adjudicator to just make reference to the murder conviction again. You're saying that you have to consider whether the person has worked toward rehabilitation during that three-year period. That's your argument? Well, there's two points. One, the seriousness of the offense and the nature of the conduct itself can certainly be considered as relevant in this inquiry. And to take your precise example, and then I'd like to move on to the actual case we're talking about, but to take your example, of course, murder is a very different crime. It's a very violent crime. But yes, I do think it's actually required that the court consider if there's any rehabilitative efforts that have been made by the fact, by the adjudicator, that, okay, I know you committed this murder, but in the last three years, you've gotten a GED and you've no disciplinary violations while incarcerated, and therefore, I need to find you're not a danger to the community. The hypothetical you're drawing, I'm not sure if the hypothetical, like I said, it would have to depend, but I do think... Well, I'm trying to give you every benefit of the doubt that for three years, the person is a model prisoner. They've just done everything right. Under your theory, you can't refer back to that first-degree murder conviction and say, you know what, I find that you're a danger to the community. No, I meant to absolutely agree with you that you can still consider the nature of the underlying criminal offense and what is particular conduct that led to it. But what happened, and to bring it back to this... It was a member of the MS-13 gang. And as I read your brief, your response is, well, he's no longer a gang member. He's renounced the gang. So, you know, he's a different guy now. And you're saying that the adjudicator can't refer back to the severity of the V-car offense and say, look, I just don't think someone with a V-car conviction is someone that I can allow at liberty. The argument is different than that. Although I appreciate your point, Your Honor. No, what the judge cannot do and what the judge did here is simply rely on the conviction itself and look at the crime and say, that's an inherently dangerous crime and therefore, for going forward, for whatever reasons, we're going to presume that he is a danger to the community no matter what, without any inquiry at this stage into the particulars of the conduct and the particular of Mr. Contreras' history, which is extraordinary rehabilitative efforts. So that same argument applies to murder, then? You would have to consider it. I'm saying in this particular case, it's all the more clear because here we don't have an offense like murder. We have a conspiracy offense committed while the gentleman was a juvenile that he has since renounced entirely and that he has gone through significant rehabilitative efforts. And the point is not so much that there is not a weighing process that can be done. It is that in this case, it is clear from the record that no weighing process was done on those grounds. Unless there's further questions, I'll preserve my time. Thank you. We'll hear you on rebuttal, Mr. Soares. Let's hear from Ms. Stephens-Guzman. Good morning, Your Honor. It's Gladys Stephens-Guzman on behalf of the government. The district court's decision in this case should be affirmed       significant rehabilitative efforts while the gentleman was a juvenile that he has since renounced entirely and that he has gone through           And the point is not so much that there is not a weighing process that can be done on those grounds. It is that in this case,      that he has since renounced entirely and that he has gone through But it had a burden of proof. It had a burden of proof. It proved there was a conviction, correct? Sorry, Your Honor? It proved there was a serious conviction, correct? It proved that there was a serious conviction. And yes, they resubmitted his conviction records and the I-213s. But at the hearing, the immigration judge gave Mr. Quinteros every opportunity to address those documents. Not only that, but when the immigration judge went off the record to think about, assess, weigh the evidence before rendering a decision, he came back on the record and told Mr. Quinteros, I'm very worried about what, I mean, I commend you for your rehab. I commend you for your efforts and your immigration proceedings. But I am very worried about the seriousness of your conviction. He didn't say that he's worried. He said, a reviewing authority might disagree with me. But I would find that as a matter of law, you are a danger to the community. Correct. In spite of how you have presented yourself and where you are, you are a different young man, I think, than you were. But that doesn't take away the fact of your criminal conduct for which you have been sentenced and convicted of. So he was relying on the criminal conduct. Now, we have held, in Judge Wise's opinion and NGO, that presenting danger to the community at one point by committing crime does not place them forever beyond redemption. And Judge Wise goes on to say, the due process, even to excludable aliens, requires an opportunity for an evaluation of an individual's risk to the community and his risk of flight. What evaluation was made by the IJ of the current risk to the community and its current danger? So before I address that, I would like to address the no decision. In that decision, the problem was that there was no evaluation. It was a perfunctory review. And that's what the judge said. There was a perfunctory review of what was already in the record. There was a perfunctory review of what at that point might have been stale evidence. In this case, the evidence, it wasn't a grudging and perfunctory review of some record evidence that had been just sitting there for years. But what was the review of his current situation? The IJ basically said, the fact of your criminal conduct for which you have been sentenced and convicted of. Right, but it wasn't in a vacuum of what was already there. Physically, the I-213 and the conviction records. No, no, what else was presented to the... The government did not present anything additional than that. How did the judge evaluate this? How did he evaluate this current situation? He applied, he made an assessment as to the dangerousness and the seriousness of the conviction. Only, only, only, only. Correct, Your Honor, based on his criminal conviction. It wasn't, it wasn't the only thing the immigration judge considered when it ultimately denied bail. It also considered a slew of evidence. But he said, you're a different young man. And then he said, but I really don't care about that. I really don't care about that. Because you committed a crime. But that's the problem with this court's jurisdiction in 1226E. That is precisely the definition of weighing of the evidence. The, the, his, that it involved an international argument. Really, it says it's current danger. It says he's clear and convincing. That's a legal question. You, standard of review, you agree with that. But you do disagree on what the applicable standard of review is. Absolutely, Your Honor. So if you're incorrect, if he's correct, clear and convincing evidence applies, then we need to send the case back. Correct, Your Honor. If this court agrees with Mr. Quinteros for the first time, two years after his bond hearing took place, then this court, first the government would appreciate an opportunity for the parties to brief on the retroactive application of that clear and convincing standard. And at the end of the day, the court, the government understands that it needs to be remanded to the, to the district courts that they consider in first instance whether or not this new standard of proof truly created two years after the bond hearing took place is retroactively applicable. What about the nature of his detention? I have to confess to being confused about this. Isn't it possible that he's under 1231A6 and not 1226C? I mean, he was under a reinstated order of removal, wasn't he? No, he was, his order of removal is under 238B, which is a final administrative removal order, and that order is based on, it's an order, so when the immigration officials, when the government decides to instill removal proceedings against an undocumented or an individual like him that had legal status but committed a crime, therefore making him subject to removal, they can choose to go via the traditional 240 proceedings or they can do expedited proceedings. In this case, they chose 238B, which is the admin removal expedited. So you could have chosen the expedited as an aggravated felon, but you just chose the opposite path? No, no, no, that's exactly the path that was chosen. 238B was chosen because he was considered an aggravated felon, but the attorney general in his discretion, unreviewable discretion, did was choose 238B over the traditional 240 proceedings. That's why the relief he's only eligible for is withholding of removal, so that if he gets granted withholding of removal, it doesn't mean that he gets to stay in the United States. It just means that he doesn't get to be removed to Mexico. I'm sorry, El Salvador. I apologize for that. Okay, thank you for clarifying that. Of course. So it is the government's position that the immigration judge complied with due process because at the time of his hearing, under Abdullahi, and I'm pretty sure I'm not, I'm going to say this name wrong, Phil Jay, Phil Hay, the only thing due process required was that the immigration judge give him a hearing in which the fact-finding was based on the record before him was disclosed to Mr. Quinteros, Quinteros be allowed to advocate on his own behalf, and that the immigration judge make an individualized determination that announced his decisions in terms sufficient to enable the district court, and now this court, to determine if the immigration heard, thought, and actually considered the evidence before him, not just reacted in that grudging, perfunctory manner that happened in no. And in this case, that's exactly what happened. Now, going for... Can you address the status of the petition for review? Because regardless of whether we grant habeas or not, it would seem that expedition would be beneficial to everybody. The government, we just got back from a lapse in appropriation, so everybody's kind of like still figuring out what to do with their docket. But the government is still considering, because of this, because he's been in detention for five years, and because we have a habeas, in this case, pending, the government is still considering whether or not to request an expedited process in his PFR. They just haven't... But his lawyer has not requested? His lawyer has asked... I am not the attorney involved in his PFR, but as far as I'm aware, in my last conversations with Ms. Browning, there hasn't been any signs of expediting on his side, on Mr. Quintero's side. Can you tell us any reason why expeditions should not occur here, based on what we know of the interrelationship of this case and the PFR? I mean, there are no real weighty reasons why they shouldn't, but that's not my call to make. That's... He's in jail, right? I agree, Your Honor. I mean, wouldn't it be appropriate for him and for the United States to get some closure as to his status here? It would certainly be beneficial. That's why the government is considering it. You say in your brief that based on Jennings, the government no longer has the burden of proof. Yes, it is. I had a hard time finding that in Jennings. Let me look for the... I have the pinpoint citation. I apologize, Your Honor. Although that probably wouldn't be relevant anyway. At page 841... Oh, no, that's not the one. That's the one that I wanted to close with. At Jennings... I believe it is 841 that the government no longer has... Where is my... I believe it is at 841, but I obviously could be wrong. For a constitutional claim? For a constitutional claim or a statutory claim? I believe it is... It is definitely for the statutory claim, and I think it also the government believes, truly believes it also applies for the constitutional claims. But in the 1226 context, it remanded to the Ninth Circuit, which presently the Ninth Circuit for precisely that issue, and the Ninth Circuit has remanded to the district court. And as far as I understand, the briefing is not completed in the district court for that issue, for the remand issue. I'm not seeing it. I apologize, Your Honor. I thought I had that pinpoint citation here. Clearly, I don't. Well, it might be pinpoint to the page, but I'm reading the page and I don't see it. So as we were... As the government was explaining, the problem in this case is that Mr. Quinteros is adamant about applying the clear and convincing standard, which is not the standard that was available at that point in time when his bond clearing occurred. Because in this court's decisions in Abdullahi and Filji, very much specified what the due process constituted, this court is limited to assess whether or not the fact finding was based on a record that was supplied to Quinteros that he, whether or not the IJ gave him an opportunity to advocate on his behalf and whether or not the decision has enough meat in it to determine that all those steps took place. And I think that not only the decision, but if you go to the transcript, you can see that that is precisely what happened. The immigration judge considered existing record evidence, not only the government's evidence, but also Mr. Quinteros's letters regarding his character, his rehabilitation. It's just troubling when the IJ says, you know, you are a changed man and you did a great job here and, you know, your current situation is you're a terrific guy, but you have this crime and you wonder whether given Judge Wise and our statement that, you know, the fact that you had a conviction doesn't mean that that's the basis on which your current condition should be judged. Of course, Your Honor, but even if we were to say there wasn't sufficient evidence for the immigration judge to find that dangerousness factor, we still have to deal with the flight risk. Mr. Quinteros would have to win on both counts. And there was sufficient current evidence regarding his flight risk that it was submitted by he himself because, and as... What did he say that conceded that he was a flight risk? He didn't concede that he was a flight risk, but the fact that he submitted affidavits that were mostly about his characters and nothing that tied him to bank accounts, to properties, to... But this... See, the problem is now we're entering the slippery slope of reweighing the evidence of what is the evidence that should be there. That what evidence  We've been in detention for so long. Right, but, you know, that's... And that's the problem that Congress tried to address with 1226A to 1226... 1226E, I apologize. The not having to get... And while, yes, it might be troubling that, you know, he's been in detention so long that he can't have a bank account or he can't have a job. But there's no real evidence other than self-serving statements about what he's... That he actually has a job that once he gets out... Self-serving things are important, aren't they? They are, but then we go... They're important, but their importance vis-a-vis the finality of his proceedings, vis-a-vis flight risk or dangerousness is precisely a reweighing of the evidence. And that is exactly what Congress addressed in 1226E. So, we go back to the original due process. Yes, while this court while this court might have jurisdiction maintains jurisdiction to review if that hearing complied with the constitutional guarantees as described in Abdullahi and Field Day, the purpose of that review is not to decide if appropriate weight was given or if the facts are supported. Does he have any control over his detention? Could he have been litigating his claims for withholding of removal and protection under the Convention Against Torture from El Salvador? Yes. And how would that have worked? How would he have accomplished that? Well, he has counsel, so it would be through his counsel that he would be. The counsel would have been able to do what? He would have been able to... The counsel would have acceded to the voluntary departure and then continued to litigate the claims while he was... Well, he would have a final order of removal from the agency that can be put into effect. I've run out of time, but that can be put into effect but for the automatic stay that the Third Circuit has issued. So... I see. So if he had not sought a stay, he would have been removed in due course and his case would be continuing while he was in El Salvador. Correct. So his continued incarceration at this point is in some part attributed to his seeking these stays of removal while his case was continuing. In part, but not exclusively, his detention is a result of the interests, the balance of interest changing because he is... No, I know... Well, that's 1226C. It's mandatory detention, but my point... I'm trying to get a handle on the  whether his detention is strictly, whether he's strictly at the mercy of 1226C and mandatory detention or whether he had the ability at some point in time to be back in El Salvador and have his case pending while he was at liberty in El Salvador rather than being incarcerated here. He remains in custody because he has filed a PFR and an automatic stay of removal has been issued. Whether or not the government would... Should the state not exist or should the after briefing the court decide that to deny his stay, then it's a decision that DHS needs to make once it decides whether to give him another bond or whether the hearing is ordered by this court or whether or not they're going to effectuate removal while the PFR is pending. Which is not common. If in fact were his circumstance and he made the allegation and he didn't want to go back to El Salvador because he might be targeted because of his former gang relationships, would he have an opportunity to raise that in any proceeding? That is the point of the withholding only proceeding so that the government does not remove him to El Salvador but remove him to any third country that under the regulations might accept him. If the bench doesn't accept him to El Salvador then the government will not remove him to any third country that under the regulations might accept him to El Salvador. If the government doesn't accept him to El Salvador then the government will not remove him to any third    the regulations might accept him to El Salvador. If the government doesn't accept him to El Salvador then the government will not remove him to any third country that under the regulations might accept him to El  If the      then the government will not remove him to any third country that under the regulations might accept him to El Salvador. If the government doesn't      government    third country that under the regulations might accept him to El Salvador. If the government doesn't accept him to El Salvador then  government   to any third country that under the regulations might accept him to El Salvador. If the government doesn't accept him to El Salvador. If the government doesn't accept him to El Salvador.           country that under the regulations might accept him to El Salvador. If the government doesn't accept him to El Salvador. then  cannot meet the evidence. If it does not meet that standard it cannot continue to detain the alien. It has not met that standard yet. Ev everybody who had a bond hearing previously where somebody wants to say it's clear and convincing automatically they're entitled to a new bond hearing. There has to be a determination under Teague or whatever about whether it's of constitutional proportions. It does not because it's a continuing inquiry. If the bond hearing previously was adjudicated to allow for continued detention and then three years later the standard of review was heightened then that person can file a new habeas petition based on that particular allegation. You would have to file a new habeas petition? No because in this case the habeas petition should have been applied. So we've already made that argument. It's already been briefed in this case as to why it should be applied. And this is not a retroactive application of that. This is simply the normal course of proceedings when somebody raises an argument such as in Guerrero such as in the Ninth Circuit decision in    confrontation clause jurisprudence. The argument I hear you making in response to Judge Rendell's question would mean that every criminal defendant convicted in a criminal  Crawford's sea change in confrontation law requires a new trial. And my understanding is that might be true if those previously were entitled to retroactive treatment, right? Isn't that the whole point? This is a separate question, Your Honor. This is brought up in this particular case. The challenge was made in two decisions in the Ninth Circuit, one of which is cited in the opposition brief, one of which has been cited by this court on behalf of every person convicted prior to Crawford being decided. And then you could say, look, my client didn't have a full-blown confrontation like Crawford requires, and the answer of the federal courts is, well, the trial judge made no error because Crawford hadn't been decided at the time that defendant was tried. Yeah, there are different considerations in the two, and the difference is between the habeas context and the criminal procedure context, and the habeas context in what we're talking about now. Here we are not talking about whether the trial was correct or whether the trial was correctly decided, and that is the Crawford issue. Whether it was retroactively applied to that particular proceeding is the question in that case, and that's going back well beyond the habeas petition, and in fact you're looking backwards. In this particular case with the habeas petition, we're not challenging the initial detention. We are challenging the detention as of the date of the hearing, and we are not going to review by this court because we filed that petition in February of 2017, challenging his continued detention going forward saying that not only was Mr. Contreras entitled to a hearing, but he was entitled to a hearing based on clear and convincing evidence. That this court had not yet made clear that that was the standard, was merely a matter for argument as of this habeas petition. Okay, fine. Let me just ask another practical question. I'm sorry to be so practically minded, but why would we send this back for an appropriate bond hearing in your view under the appropriate legal standard rather than just decide his case? I think that's appropriate, Your Honor. I think, in fact... We should just decide his case, his petition for review, right? Oh, no, no, no. I do not think that... You don't want us to decide his petition. Oh, no, I'd love for you, I mean, I'm happy to do that. I'm not of course adjudicating that. Then we should do that post haste, right, and bring closure to this matter one way or the other. I would, of course, be happy to file that, but to get back to your point as to whether this can be expedited, certainly it can be expedited.  don't know why these proceedings have gone on for so long without him having any ability to really control them. And again, it just shows that now for five years he has been detained without the constitutionally adequate bail hearing that as of this point even the government has conceded he has not  to do this. He has to be released from detention while this court decides. And if it does it expeditiously, all the better. But what he does not want to do and what he is constitutionally should not be able to do, what government officials should not be allowed to do, is to continue to detain him for more, going on a decade after this year, while in civil detention that is not his fault, that is of no concern of him, and that while he is just waiting for proceedings to which he is entitled by the constitution to undergo and complete. No, Your Honor, he would prefer that this court decides. The government has detained him for  After five years. What do you mean a decade? After five years, his length of detention has been extraordinary at this point in time. But has it been a decade or not? No, it's five years, Your Honor, and I just apologize. I misspoke. We are going on to the end  this case. Thank you, Mr. Sorensen. Thank you, Ms. Guzman. We'll take the matter under advisement.